**NOT RECOMMENDED FOR PUBLICATION**
File Name: 05a0070n.06
Filed: January 31, 2005

**No. 03-3713**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| VINCENT A. LUCIDO, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| JO ANNE B. BARNHART, | ) | THE SOUTHERN DISTRICT OF |
| COMMISSIONER OF SOCIAL SECURITY, | ) | OHIO |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

**Before: SILER and ROGERS, Circuit Judges; CALDWELL, District Judge.**[*]

**PER CURIAM.** Vincent A. Lucido appeals the denial of his application for social security disability benefits. As there was substantial evidence supporting the Administrative Law Judge's (ALJ) determination that Lucido had a residual functional capacity (RFC) capable of medium work with some extra restrictions, and that substantial numbers of jobs were available for Lucido to perform given this RFC, we **AFFIRM**.

**<u>BACKGROUND</u>**

In October 1997, Lucido, a coal miner, sustained an injury to his right shoulder when he fell from a truck while working. A MRI showed significant herniation at disc C4-5. Lucido began treatment under the care of a chiropractor, Lawrence deGarmeaux.

---

[*]The Honorable Karen Caldwell, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Lucido returned to work in February 1998, but left again in June 1998 upon the chiropractor's advice in order to pursue a more aggressive course of treatment. In July 1998, the doctor for the workmen's compensation carrier, Dr. Cunningham, examined Lucido and found that Lucido's leaving work for four to six weeks of care was not warranted, stating that Lucido's "subjective complaints are far in excess of any objective evidence of medical impairment." In October 1998, Lucido applied for social security disability benefits due to his herniated disc and shoulder pain.

In December 1998, Lucido sought mental health aid from Dr. Mendelson, a psychologist, due to the emotional strain of not being able to work. Mendelson's evaluation found that Lucido's entire self-worth revolved around the mine where he had worked for over twenty-five years. Mendelson concluded that Lucido was so depressed by his inability to work at the mine that he was not capable of any substantial work at that time. However, Mendelson also opined that with medication and counseling, Lucido's condition would improve.

In May 1999, the Social Security Administration denied Lucido's application for benefits. Upon his request for reconsideration, the Administration had Dr. Caldwell and Dr. Demuth evaluate Lucido's file for physical RFC, and commissioned a separate report from a psychologist, Alice Chambly, on Lucido's mental health status. Both reports found that Lucido had significant impairments. However, the Caldwell/Demuth report also found Lucido had such significant work abilities as the unlimited use of his hands; the ability to sit, with breaks, for six hours in an eight hour workday; and the ability to carry twenty-five pounds. Chambly additionally opined that Lucido mentally appeared "capable of a variety of simple routine, repetitive tasks done in an environment

in which contact [with] others is limited." Additionally, in March-April 1999, Lucido was examined by Dr. Tosi, a psychologist, and Dr. Toledo, an occupational medicine practitioner. Toledo found that Lucido's ability to work was only mildly impaired by his objective physical ailments.

In August 1999, Lucido was denied benefits upon reconsideration. He requested and received an administrative hearing, where both he and Jan Birmingham, a vocational expert (VE), testified. Lucido informed the ALJ that he was functioning on a daily basis, but that he was in constant pain. The ALJ asked the VE what jobs might hypothetically fit a person of Lucido's age, education and experience, capable of medium work, but restricted to low stress jobs without production quotas, no dealings with the public, and minimal interpersonal contact with supervisors and co-workers. The VE responded that such jobs as spray painter and order filler, representing around 2,600 jobs in the Cincinnati-Dayton, Ohio area would fit such a hypothetical. With the hypothetical revised to encompass light or sedentary work restrictions, the VE identified the existence in the area of 3,600 jobs including copy machine operator and silver wrapper, and 3,200 jobs including table worker and lens inserter.

The ALJ found that while objective medical evidence reasonably supported Lucido's subjective complaints of pain, they were disproportionate to the objective findings of the examining physicians. The ALJ also found that Lucido was not capable of performing his past work, but that he had a RFC permitting medium level work with the restrictions outlined in the hypothetical presented to the VE. As the VE identified significant numbers of jobs that Lucido was capable of performing in the economy based upon his RFC with the additional restrictions, the ALJ denied disability benefits to Lucido. That decision was upheld by the district court.

## ANALYSIS

The findings of an ALJ are conclusive if they are supported by substantial evidence. *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). Lucido presents multiple arguments for review, but at their core, they attack the findings of the ALJ in regard to Lucido's RFC and the evidence that supported the ALJ's findings.

### A. Lucido's Residual Functional Capacity.

**1. Physical.** Chiropractors are not granted the same status as other licensed medical practitioners under the rules governing social security claims. 20 C.F.R. § 404.1513 (2003). Therefore, deGarmeaux's treatment relationship was not entitled to the special consideration of a treating physician under 20 C.F.R. § 404.1527. Instead, the ALJ relied heavily upon the examining and/or reviewing physicians who all agreed that there was an objective medical basis for Lucido's complaints, but none ventured an opinion of severe limitation to the extent as deGarmeaux. Lucido attacks Cunningham's and Toledo's opinions as being biased and/or suspect sources as they were hired by Lucido's workmen's compensation carrier. However, the ALJ's findings are supported by the assessment of the reviewing physicians, Demuth and Caldwell, who have the strongest claims to neutrality.

Furthermore, while Lucido presented some evidence supporting his subjective complaints, this court has "recognized that determinations of credibility related to subjective complaints of pain rest with the ALJ," and should not be discarded lightly. *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 852 (6th Cir. 1986). More than a scintilla of evidence supports the ALJ's credibility findings. Therefore, we cannot disturb them on this review.

**2. Mental.** As a treating source, Mendelson normally should be given substantial, if not controlling, weight for his opinion in regard to Lucido's RFC. 20 C.F.R. §§ 404.1527 and 404.1513. However, the Commissioner retains ultimate authority as to the conclusion of disability. 20 C.F.R. § 404.1527(e). Mendelson's opinion described Lucido's limitations and concluded that he was totally disabled and not capable of working based upon an inability to concentrate, remember, or interact with others. The ALJ cited countervailing evidence that Lucido did have the ability to interact with others and remember, and that he was functioning mentally on a daily basis, including opinions from other examining psychologists that while Lucido's mental impairment may result in some limitations, it was not necessarily "disabling." Given that the ALJ conceded some mental limitations to Lucido's depression by adding such extra restrictions as minimal interpersonal contact and low stress job duties to Lucido's RFC, which were consistent with the evidence cited by the ALJ and Mendelson's opinion, it cannot be said that the ALJ's decision was not supported by substantial evidence. The ALJ recognized and made appropriate allowances for Lucido's mental impairment consistent with the evidence in the record.

**B. Substantial numbers of jobs existing in the economy.** Lucido does not challenge the existence or the duties of the jobs that the VE identified as existing in substantial numbers. Instead, his attack focuses solely upon the ALJ's findings as to his ability to perform such jobs, which is a continuing attack upon the ALJ's RFC determination. Given that the ALJ's findings as to Lucido's RFC were supported by substantial evidence, the finding that substantial numbers of jobs exist in the economy that Lucido is capable of performing is also supported by substantial evidence.

**AFFIRMED.**